No. 89-572

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF

PEGGY MAHAFFEY,

Petitioner and Respondent,

and

BOYD MAHAFFEY,

Respondent and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brett C. Asselstine, Great Falls, Montana

For Respondent:

E. Lee LeVeque, Great Falls, Montana

Submitted on Briefs: May 3, 1990

Decided: June 7, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The District Court for the Eighth Judicial District, Cascade County, entered judgment dissolving the parties' marriage and distributing marital property. Boyd Mahaffey appeals. We affirm.

The issues are:

1.  Did the District Court abuse its discretion by denying Boyd Mahaffey's motion to continue the trial for thirty days due to his bad health?

2.  Did the court err in determining that the parties had entered into a common law marriage?

3.  Did the court make an inequitable distribution of property?

Peggy Mahaffey (Peggy) filed a petition for dissolution of marriage from Boyd Mahaffey (Boyd) in December 1988. In his response to the petition, Boyd denied that the parties had entered into a marriage. A pretrial conference was set for May 22, 1989. Boyd moved to continue the conference because he was ill and had been in the hospital. Peggy objected to a continuance and the conference was held.

Trial was set for July 7, 1989, but on July 5, Boyd moved for and was granted a continuance because he was hospitalized for high blood pressure. Trial was reset for August 4. On August 2, Boyd moved for a thirty-day continuance because of his emphysema and hypertension. That motion was denied.

1

At trial, Peggy presented evidence that she and Boyd had entered into a common law marriage on July 30, 1985. At that time, she was thirty-six and he was fifty-nine. No children were born of their union. A home built in 1987 in Great Falls was the only marital property the court was asked to distribute. Both parties testified at trial, as did several witnesses for each side.

The court concluded that a common law marriage had been entered, that the marriage was irretrievably broken, and that Boyd should pay Peggy half the value of the marital home, or $44,892. From that judgment, Boyd appeals.

I

Did the District Court abuse its discretion by denying Boyd's motion to continue the trial for thirty days due to his bad health?

Boyd contends that he was obviously sick at the time of trial, that he was physically and mentally unable to assist his counsel, and that he was unable to understand the proceedings and to testify coherently. He states that Peggy made no showing that she would have been prejudiced by an extension of time and that the trial court's failure to grant the extension was an abuse of discretion.

The record shows that Boyd was present at the August 4 trial and that he testified extensively in his own behalf. Although the court noted that Boyd was ill, his illness did not prevent him from presenting his case. The motion for continuance of the August 4 court date followed several other motions for continuances by Boyd.

2

We hold that the District Court did not abuse its discretion in denying Boyd's motion for a further continuance.

II

Did the court err in determining that the parties had entered into a common law marriage?

To establish a common law marriage in Montana, it must be shown that parties capable of consenting to the marriage did so by mutual assent and agreement and that they established the marriage by cohabitation and repute. In re Marriage of Geertz (1988), 232 Mont. 141, 145, 755 P.2d 34, 37. Boyd argues that there was no showing that he was competent to enter into a marriage, that there was no present agreement to be married, and that Peggy did not establish the element of cohabitation and repute.

There is nothing in the record to indicate that Boyd was incompetent to consent to marriage in July 1985. In the absence of any evidence that Boyd was incompetent, we conclude that no finding was necessary on that point.

Peggy testified that she and Boyd exchanged wedding rings on July 30, 1985, intending to be husband and wife and to go through the actual ceremony later. Boyd testified that they agreed only to cohabit for the present and to marry later. Where evidence conflicts, it is the province of the finder of fact to resolve the conflict, and this Court's function is to determine only whether substantial evidence supports the findings. In re Support of

3

Rockman (1985), 217 Mont. 498, 501, 705 P.2d 590, 591. We conclude that substantial evidence supports the finding that Boyd and Peggy were married when they exchanged wedding rings on July 30, 1985.

Although Boyd presented testimony to the contrary, Peggy produced a number of witnesses who testified that she and Boyd lived together and held themselves out as a married couple. These included friends, family, coworkers, and the contractor who designed the new home in Great Falls. Witnesses testified that at Peggy's daughter's January 1988 wedding, Boyd "gave away" the bride, and the wedding invitations were issued by "Mr. and Mrs. Boyd Mahaffey." Other witnesses testified that Boyd introduced Peggy as "my wife." Peggy was insured on Boyd's automobile liability coverage as Peggy Mahaffey. We conclude that substantial evidence supports the court's findings as to cohabitation and repute.

In sum, we conclude that Peggy presented substantial evidence that she and Boyd were married by mutual agreement and that they established the marriage by cohabitation and repute. We hold that the District Court did not err in determining that the parties had entered into a common law marriage.

### III

Did the court make an inequitable distribution of property?

Boyd maintains that an equal division of the value of the house was inequitable because this marriage was of short duration,

4

there were no children born of the marriage, and Peggy did not contribute to the marital assets. He argues that the house should be his alone. The parties stipulated to the division of all other property they owned.

This Court will reverse a property distribution only upon a showing that the district court has acted arbitrarily or committed a clear abuse of discretion. In re Marriage of Hall (1987), 228 Mont. 36, 39, 740 P.2d 684, 686. Peggy testified that she contributed $10,000 toward the value of the home. She produced receipts at trial totaling nearly $7,000. She further testified that she assisted in painting the interior of the home, selected carpeting and draperies, and did cooking, cleaning, housework, and laundry during the marriage. The court found that Boyd had the financial means to pay Peggy $44,892. We hold that the court did not abuse its discretion in dividing the value of the home equally between the parties.

Affirmed.

_____
Chief Justice

5

We concur:

_____
John C. Sheehy

_____
Diane G. Barz

_____

_____
R.C. McDonough
Justices

6